IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE B. SOKOLOWSKI,<br>Plaintiff<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant | CIVIL ACTION NO. 4:CV-11-0065<br><br>(Judge Nealon) |

FILED
SCRANTON
MAR 1 6 2012
Per_____
DEPUTY CLERK

### MEMORANDUM

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Bruce Sokolowski's claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below, the decision of the Commissioner will be affirmed.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." Sokolowski met the insured status requirements of the Social Security Act through March 31, 2008. (Tr. 17).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

Sokolowski was born on December 1, 1962 and is considered a younger individual under

the Regulations. (Tr. 74, 111); 20 C.F.R. § 416.963. He has a high school education. (Tr. 74). In approximately 1991, Sokolowski was in a motorcycle accident and suffers from chronic pain in his back, legs and knees. (Tr. 140, 231-35). In May 2008, Sokolowski suffered a heart attack and was treated by Stylianos Galanakis, M.D. (Tr. 188-190). Sokolowski had a left heart catheterization, coronary angiography, left ventriculography, angioplasty and stenting. (Tr. 72-73, 188-190). Sokolowski also testified that he had a stroke two years before the heart attack. (Tr. 72-73).

Sokolowski protectively filed applications for disability insurance benefits and supplemental security income on August 9, 2006, alleging disability since December 31, 2003 due to a back injury and knee and leg pain. (Tr. 104-111). After his request for benefits was denied at the initial level, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 87-95). A hearing was held on November 6, 2008 before ALJ Joseph F. Leary. (Tr. 57-77). ALJ Leary issued a decision on January 15, 2009 denying Sokolowksi benefits. (Tr. 12-24). Sokolowski then requested review by the Appeals Council which, by Notice of Action dated November 12, 2010, denied review, making the decision of the ALJ final. (Tr. 1-6).

On January 10, 2011, Plaintiff filed a complaint seeking review of the Commissioner of Social Security Administration's denial of his application for Social Security disability benefits. (Doc. 1). The Commissioner filed an answer to the complaint and a copy of the administrative record on March 17, 2011. (Docs. 6, 7). Sokolowski filed the brief in support of his appeal on May 27, 2011, and the Commissioner filed his brief on June 29, 2011. (Docs. 11, 12). The matter is ripe for disposition and, for the reasons set forth below, the Commissioner's decision will be affirmed.

**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial

evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

[a]n individual shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment that is severe or a combination of impairments that is severe,[2] (3) has an impairment or combination of

---

1. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

2. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

impairments that meets or equals the requirements of a listed impairment,[3] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The ALJ proceeded through the sequential evaluation process and determined, at step four, that Sokolowski was not disabled. (Tr. 16-24). At step one, the ALJ found that Sokolowski had not engaged in substantial gainful work activity since December 31, 2003, the alleged onset date. (Tr. 17).

---

3. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

At step two, the ALJ found that Sokolowski suffered from the severe impairments of degenerative disc disease with radiculopathy of the lower extremities, chronic pain syndrome and status post acute myocardial infarction. (Tr. 18). The ALJ also found that Sokolowski's mental impairment of anxiety disorder was not a severe impairment.[4] (Tr. 18).

At step three of the sequential evaluation process, the ALJ found that Sokolowski did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 19).

At step four of the sequential evaluation process, the ALJ found that Sokolowski is capable of performing his past relevant work as a service station manager, as he actually performed it. (Tr. 23). Accordingly, Sokolowski was found to be not disabled under the Act from December 31, 2003 through the date of the ALJ's decision. (Tr. 23).

In his appeal brief, Sokolowski argues that the ALJ erred in his credibility determination, erred by not giving appropriate weight to the opinion of Sokolowski's treating physician, Mark Cruciani, M.D., and erred in determining that he could perform his past work. (Doc. 11). Upon review, this Court finds no merit in Sokolowski's arguments.

Regarding his credibility, Sokolowski states that he is a younger individual, suffers from constant pain, has severe impairments that preclude him from performing his past work, and is totally disabled. (Doc. 11, pg. 6). Sokolowski testified that he could hardly walk, he uses ice

---

4. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

packs and heating pads to treat his pain, he does no chores at home, his mother does the shopping and his brother helps around the house. (Doc. 11, pgs. 6-7); (Tr. 64-70). On a scale of zero to ten, zero being no pain, Sokolowski rated his pain at a six or seven, when he takes his medication. (Tr. 70). He argues that such testimony is credible and consistent with his complaints of pain to Dr. Cruciani. (Doc. 11, pgs. 6-7).

Defendant argues that the ALJ's credibility determination is not reviewable, the ALJ correctly determined that Sokolowski's subjective complaints of pain were not entirely credible, Sokolowski's subjective complaints are not supported by any objective evidence, and the ALJ nevertheless accounted for Sokolowski's pain when making his residual functional capacity assessment. (Doc. 12, pgs. 8-10).

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. March 7, 2000). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony. Id.

After review, it is determined that the ALJ considered Sokolowski's subjective complaints as well as the medical evidence of record. The ALJ ultimately concluded that

8

Sokolowski was not totally disabled. It is the ALJ's responsibility to weigh the subjective complaints against the medical evidence of record. The ALJ did not reject outright Sokolowski's testimony nor the existence of impairments, but found the severity of them to be exaggerated. (Tr. 21-22). The ALJ, while noting that Sokolowski's disability case is dependent on the element of pain, which is difficult to evaluate, nevertheless determined that there is no evidence of chronic pain and, as a result, he is not disabled. (Tr. 21-22).

While determining that Sokolowski suffers from the impairments claimed, the ALJ found that the limitations resulting therefrom were overstated. The ALJ noted that Sokolowski's complaints "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21). By evaluating the extent to which Sokolowski's subjective complaints were reasonably consistent with the objective medical evidence, the credibility analysis was proper and the assessment is supported by substantial evidence. See Blue Ridge Erectors v. Occupational Safety & Health Review Com'n, 261 Fed. Appx. 408, 410 (3d Cir. 2008) (quoting St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) ("[T]he ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable.")).

Sokolowski next argues that the ALJ did not give appropriate weight to the opinion of Dr. Cruciani. (Doc. 11, pgs. 7-9). Specifically, he argues that the ALJ erred by discounting Dr. Cruciani's statement that Sokolowski suffers from "severe career-ending chronic pain syndrome." (Doc. 11, pg. 7); (Tr. 202).

Sokolowski also notes that the opinion of Vincent Bianca, M.D., supports Dr. Cruciani's opinion. (Doc. 11, pg. 8) (Tr. 165-68). Dr. Bianca examined Sokolowski in January 2007. (Tr. 165-68). He noted that Sokolowski had reduced reflexes in the lower extremities, decreased range of motion of the LS spine, reduced muscular strength in the lower extremities, a swagger and limp to his gait and station, and pain on palpation of the LS spine with paravertebral muscular spasm. (Tr. 166). Dr. Bianca ultimately diagnosed Sokolowski with discogenic disc disease with radiculopathy into both lower extremities, mild muscular weakness, gait and station disturbance, and chronic pain syndrome. (Tr. 166).

Defendant argues that Sokolowski is impermissibly asking the Court to re-weigh the evidence, Dr. Cruciani never issued an opinion about Sokolowski's functional limitations, the ALJ was not required to give controlling weight to Dr. Cruciani's opinion that Sokolowski's pain was "career-ending", and the evidence of record supports the ALJ's decision that Sokolowski was not disabled. (Doc. 12, pgs. 10-14).

The Third Circuit set forth the standard for evaluating the opinion of a treating physician in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir. 1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the

> claimant is disabled. See Adorno, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Kent, 710 F.2d at 115.

Id. at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

Sokolowski first treated with Dr. Cruciani in 1998. (Tr. 163-64). On February 9, 1998, Dr. Cruciani noted that Sokolowski suffered from intractable low back pain syndrome and prescribed pain medication. (Tr. 163).

Sokolowski did not return to see Dr. Cruciani for nearly two years, on January 17, 2000. (Tr. 61, 161). Sokolowski reported that he suffered from severe back pain that made it difficult to work. (Tr. 161). Dr. Cruciani noted that Sokolowski was in a bad motor vehicle accident, however he also noted that several MRIs were normal. (Tr. 161). Upon examination, there was no antalgic gait, some mild tenderness in the right lumbosacral region, symmetrical reflexes, and a negative straight leg raise. (Tr. 161). Dr. Cruciani stated that Sokolowski was receiving Soma and Vicodin from his primary care physician, and Dr. Cruciani was concerned that he was seeking drugs. (Tr. 161). Therefore, he only gave Sokolowski a small amount of pain

medication so he would not go through withdrawal. He noted that he "did not feel comfortable with this patient giving him long term medications." (Tr. 161).

Five years later, Sokolowski returned to see Dr. Cruciani. (Tr. 61). Dr. Cruciani examined Sokolowski on January 20, 2005 and noted that he had marked tenderness in his back. (Tr. 161). Sokolowski reported that the pain patch "significantly helped take away the severe pain that was incapacitating him and now has restored some life to him." (Tr. 161). Dr. Cruciani injected Sokolowski and noted that he did not see any signs of drug seeking behavior. (Tr. 161).

In May 2005, Sokolowski reported to Dr. Cruciani that he was "pleased how I have kept him functioning" and "the medication and neurolytic blocs have definitely given him his life back." (Tr. 160). Dr. Cruciani administered another nerve block and noted that they have "successfully met our goal." (Tr. 160). Dr. Cruciani prescribed pain medication and a back brace. (Tr. 160).

Sokolowski received another nerve block injection in September 2005 and was advised to follow-up with Dr. Cruciani in four to six months. (Tr. 160).

Dr. Cruciani examined Sokolowski on December 29, 2005, and noted tenderness and decreased flexion/ extension and administered nerve block injections. (Tr. 159). Dr. Cruciani noted that he was pleased with Sokolowski's progress. (Tr. 159).

In March 2006, Dr. Cruciani again noted that Sokolowski had tenderness in his low back and crepitation of his left knee. (Tr. 160). Sokolowski received a nerve block injection in his back and a steroid injection in his knee. (Tr. 160).

In June 2006, Sokolowski reported to Dr. Cruciani that he was in pain and had a flare-up of his back pain. (Tr. 158). Dr. Cruciani administered a nerve block injection and increased his

pain medication. (Tr. 158).

On July 20, 2006, Dr. Cruciani noted that Sokolowski was well-developed, well-nourished, he was in no apparent distress and had spasms in his lower lumbosacral region. (Tr. 158). Sokolowski received pain management injections and was advised to follow-up in four months. (Tr. 158).

In November 2006, Dr. Cruciani noted that Sokolowski complained of chronic, low back, knee and hip pain. (Tr. 157, 183). He noted tenderness in Sokolowski's lower lumbosacral region and right knee and administered injections. (Tr. 183).

In May 2007, Dr. Sokolowski noted that he kept Sokolowski functioning on his medications. (Tr. 183). Upon examination, Sokolowski was "well-developed, well-nourished, no apparent distress, oriented x3, LUNGS clear, HEART R&R, ABDOMEN benign and choric low back pain." (Tr. 183). Dr. Sokolowski again administered injections. (Tr. 183).

In September and November 2007, Sokolowski complained of back, knee, collar bone and shoulder pain and Dr. Cruciani gave another injection. (Tr.183-84). Dr. Cruciani advised Sokolowski not to take more medicine than usual. (Tr. 184, 203).

On March 5, 2008, Sokolowski reported to Dr. Cruciani that he had trouble sleeping on his right side. (Tr. 184, 203). He injected Sokolowski's right hip and gave him pain patches. (Tr. 184, 203).

In May 2008, Sokolowski told Dr. Cruciani that he was recently in the hospital for coronary heart disease and had two stents installed. (Tr. 202, 207). Sokolowski stated that he had pain in his left knee and back, radiating down his right leg. (Tr. 202). Dr. Cruciani injected Sokolowski's left knee, left hip and back and advised Sokolowski to take extra pain medication,

as there were no signs of drug seeking behavior. (Tr. 202).

On August 26, 2008, Dr. Cruciani noted that Sokolowski returned "with his severe career-ending chronic pain syndrome secondary to his MVA." (Tr. 202). Sokolowski stated that the pain medications and injections allow him to live his life, though he still experiences pain radiating down his back and in his left knee. (Tr. 202). Dr. Cruciani administered injections, prescribed pain medication and recommended a follow-up visit in three months. (Tr. 202).

Upon review of all the medical evidence of record, substantial evidence supports the ALJ's decision and evaluation of Dr. Cruciani's opinion. As the ALJ notes, there are no x-rays or MRI studies of Sokolowski's back or knees in Dr. Cruciani's records. (Tr. 21, 63-64). Most of Dr. Cruciani's notes contain his course of treatment and Sokolowski's subjective complaints of pain. (Tr. 20). The ALJ noted that Dr. Cruciani's statement of Sokolowski's "career-ending" pain is not supported by objective evidence. The ALJ adequately considered the medical opinions and evidence of record.

Lastly, Sokolowski argues that the ALJ erred in determining that he could perform his past work as a service station manager. (Doc. 11, pgs. 8-9). Defendant argues that Sokolowski did not sustain his burden at step four of the sequential evaluation process. (Doc. 11, pgs. 14-15). Defendant states that Sokolowski failed to present any objective evidence supporting his subjective complaints of pain and failed to present evidence demonstrating how his alleged impairments limit his ability to perform his past relevant work. (Doc. 11, pgs. 14-15).

At the hearing, the ALJ questioned Sokolowski about his work as a manager at a service station. (Tr. 59-61). Sokolowski testified that he hired and fired employees, balanced the books, waited on customers and put gas in cars. (Doc. 11, pg. 8). He did not do any lifting at this job,

he sat at a desk most of the day, although he had pain sitting for long periods of time, he got up and down slowly, and he had trouble walking. (Doc. 11, pg. 8); (Tr. 60-61). Sokolowski states that this particular job was performed prior to his alleged onset date of December 31, 2003. (Doc. 1, pgs. 8-9). A vocational expert testified that such work is semi-skilled work performed at the light exertional level. (Tr. 74-75).

Based upon the evidence of record and the testimony at the hearing, the ALJ concluded that Sokolowski has the residual functional capacity to perform a range of light work with a sit/ stand option. Light work is defined in the Social Security Regulations as follows:

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967. This definition, with a sit/ stand option, encompasses Sokolowski's past relevant work as a service station manager. The ALJ noted that, in Sokolowski's past work as a service station manager, he did no lifting and he could sit or stand at his will. (Tr. 23). Further, the ALJ stated that, when determining the residual functional capacity, he "accorded the claimant the full benefit of the doubt." (Tr. 23).

After review of the administrative record, the decision of the Commissioner is supported

by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed. An appropriate order follows.

**Date**: March 16, 2012

_____
**United States District Judge**